UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLINA HEALTHCARE, INC., | Case No.  21-cv-05483-JCS |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO REMAND** |
| CELGENE CORPORATION, et al., | Re: Dkt. No. 14 |
| Defendants. | |

## I.      INTRODUCTION

This is one of many cases filed against Defendant Celgene Corporation and its parent Defendant Bristol-Myers Squibb Company ("BMS") regarding Celgene's[1] efforts to protect the market for two of its prescription drugs, Thalomid and Revlimid, from generic competitors.  After opting out of an earlier class action and having been dismissed from a case in Minnesota, Plaintiff Molina Healthcare, Inc. ("Molina") brought this action in the California Superior Court for the County of San Francisco,[2] asserting claims under the laws of twenty-three states, including California's Unfair Competition Law (the "UCL").  Defendants removed the case to this Court and move to transfer to the District of New Jersey or dismiss for lack of personal jurisdiction. Molina moves to remand.  The Court finds the matter suitable for resolution without oral argument and VACATES the hearing previously set for January 28, 2022.  For the reasons discussed below, Molina's motion to remand is GRANTED.  The Court does not reach Defendants motions.[3]

---

[1] For simplicity, this order generally attributes the alleged conduct at issue to Celgene.  Such references should not be construed as rejecting or otherwise addressing the contention that BMS can be held responsible for that conduct on a theory of agency or alter ego liability
[2] In state court, this action was assigned case number CGC-21-592178.
[3] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

1

## II.   BACKGROUND

### A.   Allegations of the Complaint

Molina, a corporation registered in Delaware and headquartered in Long Beach, California is the parent company of a number of regional subsidiaries that provide health insurance, including subsidiaries with names indicating they are based in or focused on California, Florida, Illinois, Kentucky, Michigan, Mississippi, Missouri, New Mexico, New York, Ohio, Puerto Rico, South Carolina, Texas, Utah, Idaho, Virginia, Washington, and Wisconsin.  Compl (dkt. 1-1) ¶ 14.[4] Those subsidiaries assigned Molina their claims arising from reimbursing plan members' purchases of Thalomid and Revlimid in Alabama, Arizona, Colorado, Florida, Georgia, Illinois, Kansas, Michigan, Missouri, Mississippi, North Carolina, New Mexico, New York, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Washington, Wisconsin, and—of particular note for the purpose of the present motions—California and New Jersey.  *Id.* ¶¶ 14–15. They asserted proper venue in the California Superior Court, where this case was filed, based on purchases in San Francisco.  *Id.* ¶ 21.

Molina contends that Celgene has used a number of different strategies to prevent competitors from developing and selling generic versions of Thalomid and Revlimid.[5]  First, Molina alleges that Celgene misused the FDA's "REMS" program, a regulatory mechanism for ensuring the safe distribution of prescription drugs, to prevent generic competitors from obtaining samples of Thalomid and Revlimid, in violation of the Food and Drug Administration Amendments Act of 2007 (the "FDAAA").  *Id.* ¶¶ 95–105.

According to Molina, Celgene pretextually cited FDA approval and other safety concerns to avoid selling samples, or in some cases refused sales without explanation, to potential generic competitors including Mylan (which later obtained a $62 million settlement from Celgene), *id.*

---

[4] According to Celgene, each Molina subsidiary is incorporated and based in the state appearing in its name.  Notice of Removal (dkt. 1) ¶ 9 n.5.

[5] Thalomid is a brand name for thalidomide, which caused severe birth defects when used as a sedative and anti-nausea medication in the 1950s and 1960s, but for which Celgene found new uses to treat multiple myeloma and a particular complication of leprosy.  *See* Compl. ¶¶ 1–3. Revlimid is a brand name for lenalidomide, "a thalidomide analog" used to treat multiple myeloma and other specific conditions.  *Id.* ¶ 3.

¶¶ 106–56, Exela, *id.* ¶¶ 166–71, Lannett (which later reached a confidential settlement with Celgene), *id.* ¶¶ 172–92, Dr. Reddy's, *id.* ¶¶ 193–99, Teva, *id.* ¶¶ 200–03, Watson, *id.* ¶¶ 204–09, and Sandoz, *id.* ¶¶ 210–15.  Molina alleges that Celgene also used exclusive contracts with its suppliers and other anticompetitive tactics to prevent generic competitors from entering the market.  *Id.* ¶¶ 224–39.

Molina further alleges that Celgene obtained a number of patents through repeated fraud on the U.S. Patent and Trademark Office, *id.* ¶¶ 240–323, by pursuing sham patent litigation against competitors and obtaining anticompetitive settlement agreements, *id.* ¶¶ 331–439, and by filing baseless citizen petitions to the FDA, *id.* ¶¶ 324–30.

Molina contends that as a result of that conduct, Celgene has maintained monopoly power in the market for Thalomid and Revlimid, resulting in Molina's subsidiaries paying higher reimbursement prices when their plan members purchase those drugs.  *See id.* ¶¶ 440–66.

Molina's first claim is for "Monopolization and Monopolistic Scheme" in violation of California's UCL, as well as similar statutes of Arizona, Florida, Illinois, Michigan, Mississippi, New Mexico, New York, North Carolina, Oregon, Utah, Vermont, and Wisconsin.  *Id.* ¶¶ 467–73.  Molina's second claim is for attempted monopolization in violation of the laws of the same states (except Vermont).  *Id.* ¶¶ 474–79.  Its third claim is for unfair and deceptive trade practices in violation of California's UCL and the laws of Arizona, Colorado, Florida, Illinois, Kansas, Michigan, Mississippi, Missouri, New Mexico, New York, North Carolina, Oregon, Pennsylvania, South Carolina, Utah, and Wisconsin.  *Id.* ¶¶ 480–83.  Molina's fourth and final claim is for unjust enrichment under the laws of Alabama, Arizona, California, Colorado, Florida, Georgia, Illinois, Kansas, Michigan, Missouri, Mississippi, North Carolina, New Jersey, New Mexico, New York, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Washington, and Wisconsin.  *Id.* ¶¶ 484–95.  Molina seeks monetary relief as well as a declaration that Celgene's conduct at issue is unlawful.  *See id.* at 99 (prayer for relief).

**B.    Notice of Removal**

Defendants removed to this Court after being served with Molina's complaint.  Notice of Removal (dkt. 1) ¶ 6.  Defendants assert that this Court has federal question jurisdiction under 28

United States District Court
Northern District of California

1    U.S.C. § 1331 because Molina's claims for monopolization and attempted monopolization under

2    the UCL necessarily turn on violations of the federal Sherman Act, *id.* ¶ 13, and because its claims

3    implicate a number of issues of federal law pertaining to prescription drug regulation and the

4    prosecution and enforcement of patents, *id.* ¶ 14. Defendants also assert that the Court has

5    diversity jurisdiction under 28 U.S.C. § 1332(a)(1), arguing that Molina (which shares Delaware

6    citizenship with Celgene and BMS) is not itself a real party in interest because its claims are based

7    solely on its subsidiaries' injuries and were collusively assigned to evade jurisdiction, that

8    Molina's New York subsidiary (which shares New York citizenship with BMS) is not a proper

9    party because it has no connection to California, and that BMS is fraudulently joined as a

10   defendant because Molina has alleged no wrongdoing by BMS. *Id.* ¶¶ 18–21.

11       **C.    Prior and Ongoing Litigation in New Jersey**

12       Mylan sued Celgene under the Sherman Act and New Jersey law in the District of New

13   Jersey in 2014, in a case assigned to the Honorable Esther Salas, who ruled on a motion to dismiss

14   and a motion for summary judgment. *See Mylan Pharms. v. Celgene Corp.*, No. CV 14-2094 ES,

15   2014 WL 12810322 (D.N.J. Dec. 23, 2014) (granting in part and denying in part a motion to

16   dismiss); *Mylan Pharms. Inc. v. Celgene Corp.*, No. CV 14-2094 (ES)(MAH), 2018 WL

17   11299447 (D.N.J. Oct. 3, 2018) (granting in part and denying in part a motion for summary

18   judgment). Mylan and Celgene settled in 2019. *Mylan Pharms. v. Celgene Corp.*, No. CV

19   14-2094, ECF Doc. No. 425 (D.N.J. Aug. 9, 2019).

20       Also in 2014, indirect purchasers of Thalomid and Revlimid sued Celgene under state and

21   federal antitrust and unfair competition law in the District of New Jersey in a case assigned to the

22   Honorable Madeline Cox Arleo, which reached a class settlement in 2020 after Judge Arleo

23   denied without prejudice a motion for class certification in 2018. *In re Thalomid & Revlimid*

24   *Antitrust Litig.*, No. CV 14-6997, 2018 WL 6573118 (D.N.J. Oct. 30, 2018) (denying class

25   certification); *In re Thalomid & Revlimid Antitrust Litig.*, No. CV 14-6997, ECF Doc. No. 325

26   (D.N.J. Oct. 2, 2020) (granting final approval of class settlement). Molina, among other health

27   insurance companies, opted out of that class.

28       Several cases filed by health insurers that opted out of the class action before Judge Arleo

4

United States District Court
Northern District of California

1   are now pending before Judge Salas.  The first of those, filed by Humana Inc. in 2019 in the

2   District of New Jersey, features a complaint largely identical to Molina's complaint here (although

3   it also asserts federal claims), and currently has a motion to dismiss under submission.  *Humana*

4   *Inc. v. Celgene Corp.*, No. 2:19-cv-07532-ES-MAH (D.N.J.); Greenblum Decl. (dkt. 19) Ex. C.

5       In March of 2020, United HealthCare Services, Inc. filed a nearly identical complaint in

6   the District of Minnesota, which that court transferred to the District of New Jersey later that year.

7   *United HealthCare Servs., Inc. v. Celgene Corp.*, No. CV 20-686 (DSD/ECW), 2020 WL 7074626

8   (D. Minn. Dec. 3, 2020) (subsequently assigned case number 2:20-cv-18531-ES-MAH in the

9   District of New Jersey).  In June of 2021, Judge Salas administratively terminated a motion to

10  dismiss in that case pending resolution of the motion to dismiss in *Humana*.

11      Molina and other insurers including BCBSM, Inc. (d/b/a Blue Cross Blue Shield of

12  Minnesota) filed a nearly identical complaint in Minnesota state court in August of 2020.

13  Greenblum Decl. Ex. E.  After Celgene removed to the District of Minnesota, that court dismissed

14  Molina (the only non-diverse plaintiff) for lack of personal jurisdiction over its claims and

15  transferred the case to New Jersey.  *BCBSM, Inc. v. Celgene Corp.*, No. 20-cv-02071

16  (SRN/ECW), 2021 WL 1087662 (D. Minn. Mar. 22, 2021) (subsequently assigned case number

17  2:21-cv-06668-ES-MAH in the District of New Jersey).  Other insurers filed nearly identical

18  complaints in the District of Columbia and the Eastern District of Pennsylvania, but stipulated to

19  transfer those cases to New Jersey after the transfer motions were decided in *UnitedHealthcare*

20  and *BCBSM*.  *See generally Blue Cross & Blue Shield Assoc. v. Celgene Corp.*, No. 2:21-cv-

21  10187-ES-MAH (D.N.J.); *Cigna Corp. v. Celgene Corp.*, No. 2:21-cv-11686-ES-MAH (D.N.J.).

22      The parties in *BCBSM*, *Blue Cross*, and *Cigna* have stipulated to extend Celgene's

23  deadline to respond to those complaints pending resolution of the motions to dismiss in *Humana*

24  and *UnitedHealthcare*.

25      From 2007 through 2018, Celgene filed a number of patent infringement cases against

26  various potential competitors in the District of New Jersey, assigned to the Honorable Susan

27  Wigenton.  *See, e.g.*, *Celgene Corp. v. Barr Labs., Inc.*, No. 07-cv-00286-SDW-MCA (D.N.J.);

28  *see generally* Mot. to Transfer (dkt. 18) at 5 (listing cases).  Here, Molina relies on those

purportedly sham cases as one basis for liability.  The *Barr Laboratories* case also included antitrust counterclaims that substantially overlap with Molina's allegations here.

### D.    The Parties' Arguments

#### 1.  Motion to Transfer

Defendants move to transfer the case to the District of New Jersey, arguing that transfer is appropriate to resolve first, leaving the remaining motions for the District of New Jersey to resolve.  *See* Mot. to Transfer (dkt. 18) at 2, 17–19.  Molina argues that courts generally consider subject matter jurisdiction, including motions to remand, before turning to other issues, and this case does not warrant an exception.  Opp'n to Transfer (dkt. 29) at 5–10.  Defendants respond that to the Court is not required to address remand before transfer, and that the circumstances of the case favor transferring it to New Jersey first to allow that court to consider whether to remand. Reply re Transfer (dkt. 36) at 12–15.

According to Defendants, the pending related cases by other parties that opted out of the *In re Thalomid & Revlimid* class action strongly favor transfer of this case to be heard by the same court.  Mot. to Transfer at 9, 11–13.  They also argue that most relevant witnesses are in or near New Jersey, there is no significant nexus between this forum and Molina's claims, and Molina's choice of forum is entitled to minimal deference because it is not a resident of this district and initially sought to pursue its claims elsewhere.  *Id.* at 9–10, 13–15.  Molina does not dispute that the District of New Jersey would be one of many appropriate venues if the case fell within federal subject matter jurisdiction (which Molina disputes), but argues that its choice of forum is entitled to deference, that both Molina and Celgene have offices in this district, that transfer would merely shift burdens from Defendants to Molina, and that Defendants have not sufficiently supported their position that most relevant witnesses are located in or near New Jersey.  Opp'n to Transfer at 11–16 & n.5.  Molina contends that the District of New Jersey has a more crowded docket than this Court, and that although there are several related cases in New Jersey, the fact that they are assigned to a handful of different judges and the existence of other related cases in other courts undermine Defendants' argument that transfer would promote efficiency or avoid inconsistent judgment.  *Id.* at 17–18.  Molina argues that counsel could ensure that the cases are coordinated

United States District Court
Northern District of California

1   even if tried in different forums. *Id.* at 18.  Molina also argues that this Court has more familiarity

2   with the law applicable to its California claims, and asserts—incorrectly—that it brings no claim

3   under New Jersey state law. *Id.* at 18–19; *cf.* Compl. ¶ 492 (asserting a claim for unjust

4   enrichment under the law of New Jersey, among other states).

5              **2.   Motion to Remand**

6          Molina moves to remand because it "asserts only state law claims and there is not complete

7   diversity between the parties." Mot. to Remand (dkt 14) at 1.  Molina argues that its references to

8   federal law do not make its state law claims effectively federal claims. *Id.* at 6–8.  It contends that

9   its UCL claims do not turn on federal law because it can prevail on the "unfair" prong of that

10  statute without showing a violation of any other law, *id.* at 8–9, and that its request for declaratory

11  judgment implicates only state law, *id.* at 9–10.  Even if its claims implicated federal law, it argues

12  that no federal issue is either actually disputed or substantial. *Id.* at 10–11.  Molina contends that

13  allowing Defendants' removal of this case to stand would disrupt the balance of responsibility

14  between state and federal courts. *Id.* at 12.

15         Defendants argue that Molina's UCL claims for monopolization necessarily raise disputed

16  and substantial issues of federal law because such a theory requires showing a violation of the

17  Sherman Act, Opp'n to Remand (dkt. 24) at 7–14, and that Molina's prayer for declaratory relief

18  that the alleged conduct is unlawful necessarily raises federal issues because Molina has alleged

19  violations of federal law, *id.* at 14–18.  Defendants clarify in their opposition brief that they do not

20  assert federal question jurisdiction based on complete preemption of state law, but instead based

21  on federal questions necessarily raised by Molina's claims under state law.  Opp'n to Remand at 7

22  n.2.

23         Turning to Defendants' assertion of diversity jurisdiction, Molina argues that it is the real

24  party in interest because its subsidiaries irrevocably and completely assigned their interests to

25  Molina, and courts have recognized such complete assignments as destroying diversity jurisdiction

26  even where the assignors retained a financial interest in the outcome of litigation.  Mot. to Remand

27  at 12–14.  Since Molina shares Delaware citizenship with both Celgene and BMS, accepting

28  Molina as the real party in interest would defeat diversity jurisdiction. *See id.* at 14.  Defendants

United States District Court
Northern District of California

respond that the Court should disregard Molina's subsidiaries' assignments as collusive and intended to manipulate jurisdiction. Opp'n to Remand at 19–22. Molina contends that the authority on which Defendants rely for that proposition applies only to assignments to *create* diversity jurisdiction, partial rather than complete assignments, or cases initially filed in federal court. Reply re Remand (dkt. 35) at 10–13.

Molina argues that even if the Court considers its subsidiaries to be the real parties in interest, there is not complete diversity of citizenship because its New York subsidiary shares New York citizenship with BMS, and Defendants cannot show that BMS was fraudulently joined because a state court might hold BMS liable for its subsidiary Celgene's conduct under a theory of agency. Mot. to Remand at 14–15. Molina contends that any question of personal jurisdiction as to the New York subsidiary's claims should be reserved for after this Court determines subject matter jurisdiction, and thus should be left for the state court to decide after remand, because the personal jurisdiction issue is complex and would not resolve the case as a whole. Mot. to Remand at 16–18. Defendants argue that the complaint as written includes no allegations or claims against BMS, and that the California court clearly lacks personal jurisdiction as to the New York subsidiary's claims. Opp'n to Remand at 22–25. Molina responds that the test for fraudulent joinder is not whether its complaint states a viable claim, but instead whether Molina's inability to do so is sufficiently clear that it would not be entitled to leave to amend, and argues that Defendants have not met their burden under that standard. Reply re Remand at 13–14.

### 3. Motion to Dismiss

Defendants move to dismiss all claims against them for lack of personal jurisdiction, tailoring separate arguments to: (1) claims under the laws of states besides California, Mot. to Dismiss (dkt. 22) at 6–8; (2) California claims against Celgene, *id.* at 9–16; and (3) claims against BMS, *id.* at 16–18. Molina opposes dismissal, or in the alternative seeks leave to conduct jurisdictional discovery. *See generally* Opp'n to Dismissal (dkt. 32). Because the Court does not reach this motion, this order does not address the parties' arguments in detail.

III.    **ANALYSIS**

A.    **Legal Standard for Remand**

Federal courts have limited subject matter jurisdiction, and may only hear cases falling within their jurisdiction.  Generally, a defendant may remove a civil action filed in state court if the action could have been filed originally in federal court.  28 U.S.C. § 1441.  The removal statutes are construed restrictively so as to limit removal jurisdiction.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108−09 (1941).  The Ninth Circuit recognizes a "strong presumption against removal."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citation and internal quotation marks omitted). Any doubts as to removability should generally be resolved in favor of remand.  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).  The defendant bears the burden of showing that removal is proper.  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

B.    **Legal Standard for Transfer Under § 1404(a)**

A case may be transferred "[f]or the convenience of parties and witnesses, in the interests of justice," to "any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  There are two prongs to this analysis.  First, the transferee district must be a district where the case could have originally been filed, meaning the court has jurisdiction and venue is proper.  *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. 03-3711 (MHP), 2003 WL 22387598, at *1 (N.D. Cal. Oct. 14, 2003).  The moving party bears the burden to prove this first step.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  If the first prong is satisfied, the court decides whether to grant or deny a motion to transfer, balancing "the plaintiff's interest to freely choose a litigation forum against the aggregate considerations of convenience of the defendants and witnesses and the interests of justice."  *Wireless Consumers*, 2003 WL 22387598, at *1; 28 U.S.C. § 1404(a). Some factors a court may consider include:

> (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum.

United States District Court
Northern District of California

1    *Royal Queentex Enters. Inc. v. Sara Lee Corp.*, No. C-99-4787 MJJ, 2000 WL 246599, at *2

2    (N.D. Cal. Mar. 1, 2000) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834,

3    843 (9th Cir. 1986)).  The specific factors that are relevant may vary depending on the "particular

4    case."  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) (listing

5    "example[s]" of factors "the court may consider" in a contract case).

6         **C.    The Court Has Discretion to Transfer Without Resolving Jurisdiction**

7              The parties dispute whether this Court must address subject matter jurisdiction and

8    Molina's motion to remand before deciding Defendants' motion to transfer.

9              The Court is aware of no binding authority specifically addressing whether a district court

10   may decide a motion to transfer under § 1404(a) before resolving a motion to remand.  Addressing

11   the related context of *forum non conveniens*, the Supreme Court has held that because dismissal

12   under that doctrine does not adjudicate the merits of a case, a "district court therefore may dispose

13   of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and

14   personal jurisdiction, when considerations of convenience, fairness, and judicial economy so

15   warrant."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007).

16   "'[J]urisdiction is vital only if the court proposes to issue a judgment on the merits.'"  *Id.* at 431

17   (quoting *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006)) (alteration in original).

18   Although the more typical course is to address jurisdiction first, "where subject-matter or personal

19   jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in

20   favor of dismissal, the court properly takes the less burdensome course."  *Id.* at 436.

21              Molina quotes *Potter v. Hughes*, 546 F.3d 1051 (9th Cir. 2008), for the proposition that

22   "'*[o]nly where* the other issue itself creates the jurisdictional issue . . . or the resolution of the

23   issue is clear while the jurisdictional issue is difficult . . . is it appropriate for the court to proceed

24   without confirming jurisdiction.'"  Opp'n to Transfer at 6 (quoting *Potter*, 546 F.3d at 1061 (Ikuta,

25   J., dissenting)) (ellipses and emphasis added in Molina's brief).  Molina neglects to note that the

26   quotation at issue comes from a dissent, and that the precedential decision by the majority not only

27   chose to reach other threshold issues without resolving jurisdiction, but expressly disagreed with

28   the dissent's treatment of *Sinochem* as describing the *only* circumstances where other issues may

be decided before jurisdiction. *Potter*, 546 F.3d at 1056 n.2. Regardless, assuming for the sake of argument that it is an accurate statement of law, the dissent's framing of the issue still leaves room to determine other threshold issues first where they are clear and the issue of jurisdiction is not.

It is true that "[m]ost courts, when faced with concurrent motions to remand and transfer, resolve the motion to remand prior to, and/or to the exclusion of, the motion to transfer." *Pac. Inv. Mgmt. Co. LLC v. Am. Int'l Grp., Inc.*, No. SA CV 15-0687-DOC, 2015 WL 3631833, at *4 (C.D. Cal. June 10, 2015). Under the reasoning of *Sinochem*, however, courts are not *required* to do so if the circumstances of a particular case warrant a different approach, because transfer to a different district "does not entail any assumption by the court of substantive 'law-declaring power.'" *Sinochem*, 549 U.S. at 433 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). To the extent district court decisions or pre-*Sinochem* authority suggests otherwise, this Court respectfully disagrees that a rule requiring determination of subject matter jurisdiction before considering a motion to transfer is consistent with that decision of the Supreme Court. *See, e.g.*, *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1153 (N.D. Cal. 2009) (quoting *Bookout v. Beck*, 354 F.2d 823, 825 (9th Cir. 1965), for the rule that "jurisdiction must be first found over the subject matter and the person before one reaches venue")).

### D. Here, Jurisdiction Should Be Resolved Before Transfer

Although a court may in appropriate circumstances transfer a case before resolving a challenge to subject matter jurisdiction, this is not such a case.

In the context of cases removed from state court and potentially related to multidistrict litigation under 28 U.S.C. § 1407, some courts considering whether to defer a motion to remand to the transferee court "(1) 'give preliminary scrutiny to the motion to remand'; (2) assess whether 'the jurisdictional issue appears factually or legally difficult'; and (3) consider whether the 'jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred.'" *Ernyes-Kofler v. Sanofi S.A.*, No. 5:16-cv-07307-EJD, 2017 WL 813506, at *1 (N.D. Cal. Mar. 2, 2017) (quoting *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001)). This standard is generally consistent with *Sinochem*'s framing of circumstances where addressing transfer before jurisdiction may be permissible, and by also considering whether the

11

1  same issues are presented in other related cases, takes into account whether the transferee court is

2  better positioned to address the jurisdictional issue as compared to the court first presented with it.

3        While the jurisdictional issues presented in Molina's motion to remand are somewhat

4  complex, Defendants have not shown that the District of New Jersey faces the same jurisdictional

5  issues in other related cases.  Of the cases most closely related to this one, the lead case there

6  (*Humana*), where a motion to dismiss is currently pending, includes a federal claim and thus does

7  not require the District of New Jersey to consider the disputes the parties have raised here

8  regarding subject matter jurisdiction.  Nor would the District of New Jersey's greater familiarity

9  generally with similar claims against Celgene necessarily place it in a better position to determine

10 the key issues for remand in this case—whether Molina (which is not currently a party to any

11 related case in New Jersey) is the real party in interest for the claims its subsidiaries assigned it,

12 whether a UCL claim based on attempted monopolization gives rise to federal question

13 jurisdiction by necessarily incorporating federal law, and whether a request for declaratory relief

14 that conduct is unlawful under state law necessarily raises federal issues where a complaint

15 includes alleged violations of federal law.  The Court therefore proceeds to resolve Molina's

16 motion to remand.

17     **E.**    **Defendants Have Not Established Federal Question Jurisdiction**

18       The general test for federal jurisdiction on removal "makes the plaintiff the master of the

19 claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Caterpillar*

20 *Inc. v. Williams*, 482 U.S. 386, 392 (1987).  But even where a plaintiff asserts only state law

21 claims, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily

22 raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without

23 disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258

24 (2013).  That exception for state claims that necessarily raise federal issues applies only "[w]here

25 all four of these requirements are met."  *Id.*

26       The Court's analysis here begins and ends with the first element of the *Gunn* test: whether

27 a federal issue is "necessarily raised" by Molina's complaint.  "When a claim can be supported by

28 alternative and independent theories—one of which is a state law theory and one of which is a

1   federal law theory—federal question jurisdiction does not attach because federal law is not a

2   necessary element of the claim."  *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996).

3   Defendants have not shown that Molina's complaint necessarily raises any federal issue, either

4   based on Molina's claims under the UCL or based on its prayer for declaratory relief.

5             **1.  Molina's UCL Claims Do Not Establish Jurisdiction**

6           Defendants' first argument for federal question jurisdiction is based on Molina's claims

7   under the UCL.

8           As a starting point, the parties dispute whether Molina's UCL claims are under the

9   "unlawful" or "unfair" prong of that statute.  Defendants note that Molina has asserted three

10  claims invoking the UCL (as well as statutes of other states): one for "Monopolization and

11  Monopolistic Scheme under State Law," Compl. ¶¶ 467–73; one for "Attempted Monopolization

12  Under State Law," *id.* ¶¶ 474–79; and one of "Unfair and Deceptive Trade Practices Under State

13  Law," *id.* ¶¶ 480–83.  Defendants also note that Molina's monopolization claim asserts that

14  Celgene "unlawfully extended its monopoly power."  *Id.* ¶ 466.  Nevertheless, the Court is not

15  persuaded that any of Molina's UCL claims necessarily invoke the "unlawful" prong.

16          The complaint does not specifically assert that Celgene's conduct violated the UCL

17  *because* it was unlawful under some other law.  It asserts that Celgene violated the UCL because

18  Celgene monopolized the market and artificially inflated prices, *id.* ¶ 469, because Celgene

19  attempted to monopolize and caused harm to Molina through those efforts, *id.* ¶¶ 475, 478; and

20  because Celgene's conduct was otherwise unfair and deceptive, *id.* ¶ 481.  The reference to

21  Celgene "unlawfully extending its monopoly power" does not compel a conclusion that any

22  separate unlawfulness of the conduct is the basis for the state claims Molina asserts, but instead

23  could be read merely as characterizing the conduct as unlawful *because* it violates those state

24  statutes, including the UCL.  Accordingly, to the extent that Molina's allegations of efforts to

25  monopolize the market for certain pharmaceuticals could support a claim under the "unfair" prong

26  of the UCL, the complaint could be read as asserting such a claim rather than (or in the alternative

27  to) a claim under the "unlawful" prong.  Taking into account precedent that any "doubt regarding

28  the right to removal" will support remand, *Matheson*, 319 F.3d at 1090, and that a federal theory

1   presented in the alternative to theories based on state law is not "necessarily raised," *Rains*, 80

2   F.3d at 346, the Court concludes that so long the conduct described in each of Molina's claims

3   could support a claim under the "unfair" prong (and not necessarily the "unlawful" prong) of the

4   UCL, the complaint should be construed as such for the purpose of determining whether it

5   necessarily raises a federal issue.

6        When brought by a *competitor*, a claim under the "unfair" prong of the UCL must "be

7   tethered to some legislatively declared policy or proof of some actual or threatened impact on

8   competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999).

9   In other words, the plaintiff must prove "conduct that threatens an incipient violation of an

10  antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable

11  to or the same as a violation of the law, or otherwise significantly threatens or harms competition."

12  *Id.* at 187.  But whether that requirement applies to claims brought by consumers, rather than

13  competitors, is a question that remains "in flux." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d

14  718, 735 (9th Cir. 2007); *see also Hauck v. Advanced Micro Devices, Inc.*, 816 F. App'x 39, 43

15  (9th Cir. 2020) (citing *Lozano*).  Some courts require a consumer plaintiff (like a competitor

16  plaintiff) to meet the *Cel-Tech* standard of a direct connection to a particular legislatively declared

17  antitrust policy, while other courts continue to allow consumer plaintiffs to use the balancing test

18  described in *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861

19  (1999), which *Cel-Tech* rejected for competitor plaintiffs.  *See Lozano*, 504 F.3d at 735–36

20  (describing that split of authority).  When the Ninth Circuit has affirmed dismissal of consumers'

21  claims under the unfairness prong of the UCL, it has declined to resolve the issue, holding that

22  dismissal was appropriate under either test based on the facts of the cases before it.  *Hauck*, 816 F.

23  App'x at 43; *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018); *Davis v. HSBC Bank*

24  *Nevada, N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012).

25        In a recent case, the Ninth Circuit described the standard as follows:

26            Under the UCL's unfairness prong, courts consider either:
            (1) whether the challenged conduct is "tethered to any underlying

27            constitutional, statutory or regulatory provision, or that it threatens
            an incipient violation of an antitrust law, or violates the policy or

28            spirit of an antitrust law," (*Durell v. Sharp Healthcare*, 183 Cal.

14

1

> App. 4th 1350, 1366 (2010)); (2) whether the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009); or (3) whether the practice's impact on the victim outweighs "the reasons, justifications and motives of the alleged wrongdoer." *Id.*

2

3

4    *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020), *cert. dismissed*, 142 S. Ct.

5    480 (2021).

6          The parties here have not addressed the distinction of whether *Cel-Tech* is limited to

7    claims by competitors.  Molina alleges that its harm stemmed from its subsidiaries paying higher

8    reimbursement prices when their plan members purchase Celgene's drugs.  *See* Compl. ¶¶ 440–66.

9    While perhaps not neatly fitting either category, Molina is more similarly situated to a consumer

10   of Celgene's product than to a competitor of Celgene.[6]  Since Molina and Celgene are not

11   competitors, no clear authority limits Molina's unfairness claim under the UCL to actual or

12   threatened violations of the antitrust laws.  Molina might be able to prevail by showing Celgene's

13   alleged conduct to monopolize and inflate the price of medication for serious medical conditions

14   was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," or by

15   showing that its harms outweighed any legitimate motive.  *See Doe*, 982 F.2d at 1214–15.  It is

16   therefore possible for Molina to prevail under the "unfair" prong without showing a violation of

17   the Sherman Act, and Molina's UCL claims can reasonably be understood as asserted under that

18   prong of the statute.

19          Celgene is correct that some district courts have held that a claim under the "unfair" prong

20   based on unilateral monopolization necessarily raises federal issues sufficient to invoke federal

21   question jurisdiction, because California's primary antitrust statute, the Cartwright Act, addresses

22   only coordinated conduct by multiple actors, not unilateral conduct.  *See Rosenman v. Facebook

23   Inc.*, No. 21-cv-02108-LHK, 2021 WL 3829549, at *5 (N.D. Cal. Aug. 27, 2021); *Cent. Valley

24   Med. Grp., Inc. v. Indep. Physician Assocs. Med. Grp., Inc.*, No. 1:19-cv-00404-LJO-SKO, 2019

25   WL 2491328, at *3 (E.D. Cal. June 14, 2019); *In re: Nat'l Football Leagues Sunday Ticket*

26

27   _____

[6] The Ninth Circuit has held where the defendant is not itself a competitor of the plaintiff, but the plaintiff's claims are based on conduct by the defendant that unfairly favors the plaintiff's competitors, the case still involves the sort of "business-competitor" claims governed by *Cel-Tech*.

28   *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014).  This is not such a case.

*Antitrust Litig.*, No. CV 15-09996-BRO (JEMx), 2016 WL 1192642, at *5 (C.D. Cal. Mar. 28, 2016)).[7]

In the first of those cases, *Sunday Ticket*, a plaintiff asserted various state law claims, including a UCL claim, stemming from DirecTV's alleged monopolization of out-of-market NFL broadcasts.  2016 WL 1192642, at *1.  The district court held that the plaintiff's UCL unfairness claim (among other claims) necessarily asserted a violation of the Sherman Act because the claim "relie[d] on Defendants' alleged 'abuse of its monopoly position' and charging 'supra-competitive prices'"—unilateral conduct that implicated the Sherman Act but not the Cartwright Act.  *Id.* at *5.  The court recognized that even under *Cel-Tech* the UCL's unfairness prong might in appropriate cases encompass claims that do not rise to the level of an actual or incipient violation of antitrust law, but held because the that the claim at issue was based on monopolization, it necessarily incorporated the Sherman Act.  *Id.* at *5 (distinguishing *PeopleBrowsr, Inc. v. Twitter, Inc.*, No. C-12-6120 EMC, 2013 WL 843032, at *4 (N.D. Cal. Mar. 6, 2013)).  Although the plaintiff in *Sunday Ticket* was a consumer, the court did not address the unsettled question of whether *Cel-Tech* governed his claims.  *See id.*

In *Central Valley Medical*, the plaintiff specifically alleged that the defendant's conduct "offend[ed] the policies of free competition and free trade and commerce set forth in, inter alia, the federal Sherman Act, Clayton Act, Federal Trade Commission Act, 15 USC § 12 et seq; 15 USC §§ 45 et seq."  2019 WL 2491328, at *3 (quoting the complaint).  The plaintiff did not allege or argue that any violation of "policies tethered to California-specific constitutional, statutory, or regulatory provisions" could support its UCL claim.  *Id.*  Applying *Cel-Tech*—appropriately, since the parties in that case were competitors of each other, *id.* at *1—the court held that the "unfair"

---

[7] In an earlier case, Judge Alsup held that a plaintiff's claim under the *unlawful* prong of the UCL necessarily raised a federal issue because the plaintiff asserted no underlying violations of law except as to federal antitrust laws.  *Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Sols., Inc.*, No. C04-01661 WHA, 2004 WL 1888769, at *4 (N.D. Cal. July 21, 2004).  The plaintiff argued that its UCL claim implicated only the unfair and fraudulent prongs of that statute, not the unlawful prong, but Judge Alsup rejected that argument as inconsistent with the claims asserted in the complaint.  *Id.*  Here, as discussed above, Molina's complaint does not clearly assert a claim under the "unlawful" prong.

claim must be tethered to a legislative policy. *Id.* at *5.[8]  Since the plaintiff asserted only federal policies as a basis for such tethering, the court held that the claim necessarily raised a federal issue. *See id.* at *3–6.

As for the recent *Rosenman* decision, although the plaintiff there was a consumer rather than competitor of the defendant, the court applied *Cel-Tech* without addressing the lingering uncertainty regarding its application outside of the competitor context.  2021 WL 3829549, at *2, *3.  The court acknowledged that even *Cel-Tech* does not always require a violation of some other antitrust law, *id.* at *3, but followed *Sunday Ticket* in holding that "where a plaintiff's UCL unfair prong claim relies on a defendant's alleged abuse of its monopoly position, that claim requires establishing a violation of federal antitrust law . . . because no California statute deals expressly with monopolization or attempted monopolization," *id.* at *4 (cleaned up).[9]

All of these cases were decided under the *Cel-Tech* standard.  In *Central Valley Medical*, the parties were competitors, and *Cel-Tech* indisputably applied.  In *Sunday Ticket* and *Rosenman*, the courts did not consider the question of whether *Cel-Tech* applied to consumer clams.  As discussed above, the Ninth Circuit has recognized multiple tests beyond *Cel-Tech* as potentially valid for such claims.  *Doe*, 982 F.3d at 1214–15.  The Court therefore does not find *Sunday Ticket*, *Central Valley Medical*, and *Rosenman* persuasive as to whether a *consumer's* claim under the unfair prong of the UCL necessarily raises federal issues by virtue of alleging monopolization or attempted monopolization.

As discussed above, looking beyond *Cel-Tech*, Molina could potentially prevail by

---

[8] The *Central Valley Medical* court acknowledged, but did not address, the language of *Cel-Tech* indicating that the conduct at issue must be "'tethered to some legislatively declared policy *or proof of some actual or threatened impact on competition*.'"  *See Cent. Valley Med.*, 2019 WL 2491328, at *3 (quoting *Cel-Tech*, 20 Cal. 4th at 186–87) (emphasis added).  The court's decision suggests that the plaintiff did not argue that it could prevail by showing proof of actual or threatened harm to competition rather than by tethering its claim to legislative policy.  *See id.* at *5.

[9] *Rosenman* quotes *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986), for the statement that "[n]o California statute deals expressly with monopolization or attempted monopolization."  That case considered whether the plaintiff could proceed on a Cartwright Act claim for monopolization or attempted monopolization when that statute was the only authority the plaintiff pleaded for the claim.  803 F.2d at 1478.  It did not consider whether such conduct could be considered "unfair" for the purpose of the UCL.

showing that Celgene's alleged monopolization or attempted monopolization of the market for certain medications was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," or that its harm to victims outweighed any valid justification. *Doe*, 982 F.3d at 1214–15. In *Lawrence v. Provident Savings Bank*, the Central District of California addressed the unsettled test for unfair conduct claims brought by consumers, and held that even where a plaintiff alleged unlawful conduct as one predicate for his UCL claim, the case did not necessarily raise federal issues because the plaintiff also alleged unfair conduct and could prevail on the *South Bay* balancing test without reference to federal law. *Lawrence*, No. 5:16-cv-00352-SVW-MRW, 2016 WL 2979194, at *3 (C.D. Cal. May 23, 2016). In *Moralez v. Kern Schools Federal Credit Union*, the Eastern District of California reached the same conclusion. No. 1:15-cv-01444-DAD, 2016 WL 2756427, at *4 (E.D. Cal. May 12, 2016) ("Indeed, under the tethering test discussed above, plaintiff appears to state a claim based on federal law alone. But, as the Ninth Circuit has concluded, the test for unfairness is broader and the court must determine whether plaintiff has stated a UCL claim when assessed under the balancing test. *Lozano*, 504 F.3d at 736."). The complaints in those cases included language more closely tracking the *South Bay* balancing test than Molina has here, but when Molina has not specifically asserted either that its UCL claim is based on a Sherman Act violation or that it is based on the balancing test, inferring the former at the expense of the latter would contravene the rule that any doubt as to jurisdiction must be resolved in favor of remand.

Even if *Cel-Tech* applied here, it left open the possibility that a plaintiff could prevail by showing "proof of some actual or threatened impact on competition," or in other words, that the conduct at issue "otherwise significantly threatens or harms competition," without necessarily showing actual or incipient violation of a specific legislatively declared policy. *Cel-Tech*, 20 Cal. 4th at 186–87. In *PeopleBrowsr*, where *Cel-Tech* applied because the parties were competitors, Judge Chen held not only that the case should be remanded because the plaintiff could prevail by showing "conduct that 'significantly threatens or harms competition,' regardless of whether it represents an actual or incipient violation of an antitrust law," but also that the plaintiff was entitled to its attorneys' fees and costs in moving to remand because the defendant failed to cite

1    any case supporting its "novel legal theory that an 'unfair act' sub-claim asserting solely a state

2    law claim based on facts that *could* also give rise to a federal claim is alone sufficient to confer on

3    this Court federal question jurisdiction."  2013 WL 843032, at *4.[10]

4        Neither *Sunday Ticket* and *Rosenman* on the one hand, nor *PeopleBrowsr* on the other,

5    provides a wholly satisfactory treatment of whether an "unfair" claim under *Cel-Tech* necessarily

6    raises a federal issue if it is based on allegations of monopolization.  The former cases did not

7    meaningfully address the "otherwise significantly threatens or harms competition" portion of *Cel-*

8    *Tech*.  The latter predated a trend of district courts "dismiss[ing] competitors' claims under this

9    prong of the statute where plaintiffs fail to identify any unusual aspect of the alleged conduct that

10   would make that conduct something that violates the 'policy and spirit' of the antitrust laws

11   without violating the actual laws themselves, comparable to the *Cel-Tech* defendant's privileged

12   status as one of two holders of a lucrative government-licensed duopoly."  *See Facebook, Inc. v.*

13   *BrandTotal Ltd.*, No. 20-cv-07182-JCS, 2021 WL 3885981, at *6 (N.D. Cal. Aug. 31, 2021)

14   (cleaned up).[11]  Regardless, *Lawrence* and *Moralez* are more persuasive in the context of a

15   consumer claim, because they acknowledge that *Cel-Tech* may not even apply to such a claim.

16       Molina has not specifically asserted a violation of the Sherman Act as the basis for its UCL

17   claims.  It may be that the monopolization and attempted monopolization that Molina has alleged,

18   if actionable under the alternative paths to an "unfair" claim that do not require tethering to a

19   specific statute, would likely also violate the Sherman Act.  But so what?  A court would not

20   inevitably need to address that question in order to consider whether the conduct is "immoral,

21   unethical, oppressive, unscrupulous or substantially injurious to consumers," or "whether the

22   practice's impact on the victim outweighs the reasons, justifications and motives of the alleged

23   wrongdoer."  *Doe*, 982 F.3d at 1214–15.  Even if it were logically necessary that any monopolistic

24   conduct that met those tests would also violate the Sherman Act, that would not mean the court

25

26   [10] At the time, *Sunday Ticket* and *Rosenman* were not yet available to lend some support to the
     defendant's position, distinguishing that case from the present one at least with respect to the
27   reasonableness of Defendants' arguments.
     [11] *See also Creative Mobile Techs., LLC v. Flywheel Software, Inc.*, No. 16-cv-02560-SI, 2017
28   WL 679496, at *6 (N.D. Cal. Feb. 21, 2017); *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-2965
     MMC, 2015 WL 4719048, at *10 (N.D. Cal. Aug. 7, 2015).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    addressing the claim had any need to *consider* the Sherman Act.  The Court therefore concludes

2    that no federal issue is necessarily raised by Molina's UCL claims.

3            Moreover, even assuming for the sake of argument that Molina's UCL claims required

4    conduct that violated some other antitrust statutes, Molina has asserted that Celgene violated a

5    host of other states' antitrust and consumer protection statute, at least some of which encompass

6    claims for monopolization.  *See, e.g.*, *Pasco Indus., Inc. v. Talco Recycling, Inc.*, 195 Ariz. 50, 57,

7    (Ct. App. 1998) (holding that Arizona Revised Statutes section 44-1403, one of the statutes on

8    which Molina bases its claims here, "prohibits monopolistic behavior by individual persons or

9    entities—in other words, unilateral activity").  The parties have not addressed whether a violation

10   of one of those statutes could support a claim under the "unlawful" prong of the UCL, or a claim

11   under the "unfair" prong based on an actual or incipient violation of the letter or spirit of a foreign

12   state's antitrust law.

13           "Unlawful" practices are defined broadly for the purpose of the UCL, encompassing

14   conduct "'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory,

15   regulatory, or court-made.'"  *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 674 (9th Cir.

16   2007) (quoting *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438, 441

17   (1994)).  "Virtually any law or regulation—federal or state, statutory or common law—can serve

18   as a predicate for an 'unlawful' prong violation."  *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th

19   1138, 1155 (2018) (cleaned up).  The Ninth Circuit has suggested, albeit in dicta in a

20   nonprecedential decision, that violations of foreign states' laws could support a UCL claim.

21   *Speyer v. Avis Rent A Car Sys., Inc.*, 242 F. App'x 474, 474–75 (9th Cir. 2007).  A handful of

22   district court decisions have held that a plaintiff may *not* bring a UCL claim based on a violation

23   of foreign law, but they are not binding on this Court and cite no California authority so holding,

24   at least so long as the violation has some connection to California.  *Hilton v. Apple Inc.*, No. CV

25   13-7674 GAF (AJWx), 2014 WL 10435005, at *3 (C.D. Cal. Apr. 18, 2014); *Van Slyke v. Cap.

26   One Bank*, No. C 07-00671 WHA, 2007 WL 3343943, at *14 (N.D. Cal. Nov. 7, 2007).  Since

27   Defendants have not addressed whether the alleged violations of other states' antitrust laws could

28   support Molina's claims without need to consider any question of federal law, and any doubts

20

1   must be resolved in favor of remand, Defendants have not met their burden to establish federal

2   question jurisdiction based on Molina's UCL claims.[12]

3          One California appellate decision cited by Defendants also warrants a brief discussion.

4   Defendants describe *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001), as "holding that [a]

5   UCL unfair prong claim premised on conduct 'alleged to be "unfair" because it unreasonably

6   restrains competition' rises and falls with [the] status of such conduct 'under the antitrust laws.'"

7   Opp'n to Remand at 11 (quoting *Chavez*, 93 Cal. App. 4th at 375).  That case actually held "that

8   conduct alleged to be 'unfair' because it unreasonably restrains competition and harms consumers,

9   such as the resale price maintenance agreement alleged here, is not 'unfair' if the conduct is

10  *deemed reasonable and condoned* under the antitrust laws."  *Chavez*, 93 Cal. App. 4th at 375

11  (emphasis added).  The court affirmed dismissal of a claim under the UCL "unfair" prong based

12  on its holding that the conduct alleged was permissible under the Cartwright Act, based on

13  specific rights of the defendant recognized by existing precedent.  *See id.* at 373–75.  As Judge

14  Chen held in *PeopleBrowsr*, the holding of *Chavez* was based on a "safe harbor" doctrine that

15  "operates, in essence, as a federal defense to the 'unfair act' claim."  *PeopleBrowsr*, 2013 WL

16  843032, at *3.  With the exception of complete federal preemption, which Defendants have

17  explicitly declined to assert here, it has long been "settled law that a case may *not* be removed to

18  federal court on the basis of a federal defense."  *Caterpillar*, 482 U.S. at 393.  Accordingly,

19  *Chavez* provides no support for Defendants' removal of this case.

20          For the reasons discussed above, the Court holds that Molina's UCL claims do not

21  necessarily raise any federal issue.  The Court therefore need not reach the parties' arguments as to

22  whether any such issue is substantial or disputed, or whether hearing this case would disrupt the

23  balance between state and federal courts.

24          **2.  Molina's Request for Declaratory Judgment Does Not Establish Jurisdiction**

25          Defendants also argue that Molina's request for declaratory relief necessarily raises a

26

27  _____

    [12] The Court declines to reach the question of whether, even if Molina's claims required some
28  connection to federal or California antitrust law, Molina's allegations of improper settlement
    agreements and exclusive supply contracts describe non-unilateral conduct sufficient to bring its
    monopolization claims with the scope of the Cartwright Act.

United States District Court
Northern District of California

federal issue because it would require a court to determine that Defendants' conduct violated a plethora of federal laws regarding patents and pharmaceutical regulations cited in Molina's complaint.  Opp'n to Remand at 14–15.  As Molina notes in its briefs, it does not assert a separate *claim* for declaratory judgment, but instead seeks such relief as a remedy under its various state law claims.  Mot. to Remand at 9; Reply re Remand at 8.  The prayer at issue seeks judgment "[d]eclaring the acts alleged herein to be unlawful under the state statutes set forth above, and the common law of unjust enrichment of the states and territories [sic[13]] set forth above."  Compl. at 99.

Defendants are correct that Molina's complaint alleges numerous violations of federal law.  *See, e.g.*, Compl. ¶ 100 (asserting that "Celgene's improper use of the REMS program as a shield to refuse to provide samples is contrary to FDAAA," specifically, 21 U.S.C. § 355-1(f)(8)); *id.* ¶ 246 (alleging that Celgene breached its duty of disclosure to the USPTO); *id.* ¶ 331 (alleging sham patent litigation).  But "merely naming a federal statute in a complaint will not confer federal jurisdiction if the only relief the plaintiff actually wants is based on state rather than federal law."  *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1195 (7th Cir. 1987), *abrogation on other grounds recognized by Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426 (7th Cir. 2015).  Defendants have not shown that Molina would be required to prove such federal violations as a necessary element of any of its state law claims, including to obtain declaratory relief that the *conduct* at issue violates state law.  Granted, if Celgene acted in accordance with federal law, that might immunize some of the conduct at issue from Molina's claims, but the possibility of that sort of federal defense, even if apparent from Molina's allegations, is not a basis for federal jurisdiction.  *See Caterpillar*, 482 U.S. at 393; *PeopleBrowsr*, 2013 WL 843032, at *3.  While courts have recognized an exception to that rule for complete federal preemption, Defendants specifically disclaim that theory of jurisdiction here.  Opp'n to Remand at 7 n.2.

The only case Defendants cite finding federal question jurisdiction based on a prayer for

---

[13] No territories are listed in Molina's claim for unjust enrichment.  *See* Compl. ¶ 492.

United States District Court
Northern District of California

relief is *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020), where the plaintiffs sought a declaration specifically that the defendant violated federal law and an injunction against further violations.  The relief requested in that case included "[f]inding, adjudging, and decreeing that Defendants have engaged in the violations of law alleged in this Petition" (which included violations of federal law) and "enjoining Defendants to comply with all *federal* and Missouri provisions applicable to the manufacture of such drugs."  *Wullschleger v. Royal Canin U.S.A., Inc.*, No. 4:19-cv-00235-GAF, ECF Doc. No. 1-1 (Petition) ¶¶ 136, 138 (W.D. Mo. Mar. 26, 2019) (emphasis added).

Defendants raise potentially valid concerns that some of the conduct at issue in Molina's complaint, such as ongoing federal patent litigation, might fall outside of a state court's power to declare unlawful.  But the state court is capable of considering such arguments and respecting the limits of its jurisdiction, and such limits do not give rise to a necessary federal issue—except perhaps a federal defense, which is insufficient confer jurisdiction.  As another district court has explained:

> While it is clear that a state court is barred from abridging a litigant's right to avail itself of a federal forum, *Felter*[14] does not speak to a right of removal when a state court is requested to do so. . . . Although the defendants herein might move the state court, in reliance upon *Felter*, to dismiss the over broad portions of the prayer for relief seeking to limit their recourse to the federal courts, that potential for dismissal as a matter of law does not lead one ineluctably to the conclusion that removal jurisdiction is likewise appropriate.

*W. Va. ex rel. McGraw v. BlueHippo Funding, LLC*, No. CV 2:07-0220, 2007 WL 9718440, at *6–7 (S.D.W. Va. July 23, 2007).  That some relief Molina seeks might not be available in state court does not in itself grant Defendants the right to remove the case to a federal court potentially more capable of entering broader judgment against them.

With the possible exception of federal defenses, which do not give rise to jurisdiction under § 1331, Defendants have not met their burden to show that Molina's prayer for declaratory relief on its state law claims necessarily raises any issue of federal law.  Since, as discussed above,

---

[14] *Gen. Atomic Co. v. Felter*, 434 U.S. 12 (1977).

United States District Court
Northern District of California

1    Defendants also have not shown a necessary federal issue embedded in Molina's UCL claims,

2    Defendants have not shown removal to be proper based on federal question jurisdiction.

3    ### F.    Defendants Have Not Established Complete Diversity of Citizenship

4         To establish diversity jurisdiction under 28 U.S.C. § 1332(a), a removing defendant must

5    show that there is complete diversity of the parties—i.e., no defendant is a citizen of the same state

6    as any plaintiff—and that the amount in controversy exceeds $75,000.  *See Caterpillar Inc. v.*

7    *Lewis*, 519 U.S. 61, 68 (1996).  Here, the parties do not dispute that Molina shares Delaware

8    citizenship with both Celgene and BMS.

9         Defendants contend that the Court should treat Molina's subsidiaries' assignment of their

10   claims to Molina as a sham to avoid federal jurisdiction, disregard Molina's citizenship, look

11   instead to the citizenship of the subsidiaries, and either disregard BMS's citizenship based on

12   fraudulent joinder or disregard Molina's New York subsidiary's citizenship because this court and

13   the California state court lack personal jurisdiction over Defendants for the purpose of that entity's

14   claims.

15        Beginning with the question of whether to disregard Molina's citizenship, courts are

16   skeptical of assignments to manipulate jurisdiction, particularly between related entities.  *See, e.g.*,

17   *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991–92 (9th Cir.

18   1994) (considering an assignment that purported to create rather than destroy diversity

19   jurisdiction).  District courts lack jurisdiction where "any party, by assignment or otherwise, has

20   been improperly or collusively made or joined to invoke the jurisdiction of such court."  28 U.S.C.

21   § 1359.  "[T]here is no similar statute prohibiting collusive assignments in order to defeat

22   jurisdiction."  *Go Computer Inc. v. Microsoft Corp.*, No. C 05-03356 JSW, 2005 WL 3113068, at

23   *2 (N.D. Cal. Nov. 21, 2005).  Nevertheless, in *Attorneys Trust v. Videotape Computer Products*,

24   93 F.3d 593 (9th Cir. 1996), the Ninth Circuit held that courts may, in at least some circumstances,

25   disregard assignments that would destroy jurisdiction, noting that "the informing principles are

26   much the same" when an assignment is intended to destroy diversity of citizenship as when it is

27   intended to create diversity.  93 F.3d at 595.

28        The *Attorneys Trust* court noted that a "complete" assignment will usually, but not always,

1    be considered valid:

2           Broadly speaking, if an assignment is entire, not partial, there is a
            very good chance that it will be found to be proper. . . .
3
            While motive can often be important, if the assignment is truly
4           absolute and complete, motive often recedes into almost nothing. . . .
            However, even when there is a complete assignment, collusion may
5           be found. That is most likely to be where there is an excellent
            opportunity for manipulation, as in transfers between corporations
6           and their subsidiaries or transfers to a shell corporation.

7    93 F.3d at 596 (citations omitted).  There, the plaintiff assignee had been assigned an account for

8    collection and filed suit in federal court, purportedly on behalf of the co-plaintiff assignor, and

9    invoked the assignor's citizenship as grounds for diversity jurisdiction under § 1332(a).  *See id.* at

10   594, 599.  The assignee "was to proceed in the attempt to collect the alleged debt and was to

11   receive 12 percent for its trouble."  *Id.* at 594.  After an adverse result, the plaintiffs argued that

12   although they had invoked the jurisdiction of the district court, they were wrong to do so because

13   the assignee's California citizenship (which it shared with the defendant) should have been

14   considered, and that the judgment was therefore void.  *See id.* at 594.  The Ninth Circuit held that

15   the assignment should be disregarded in determining jurisdiction, and the judgment should

16   therefore stand, for reasons including: the assignee "had no prior interest in the claim, and the

17   assignment was timed to coincide with the commencement of litigation; the assignee gave no

18   consideration other than its own collection work for a contingent fee, which could have been

19   effectuated without an assignment; because 88% was to go to [the assignor], the assignment was

20   partial, and, ultimately, the same counsel represented both [the assignor and assignee]."  *Id.* at 599.

21   The opinion also noted that the assignor had been identified as the plaintiff in the district court.

22   *Id.*

23          In reaching that conclusion, the Ninth Circuit acknowledged "older Supreme Court

24   decisions regarding removal" from the 1880s, where "the Court refused to allow removal of an

25   action filed in state court after a diversity-destroying colorable assignment was made, even if it

26   was for collection only," based on reticence "to interfere with state court jurisdiction," lack of any

27   statutory authority, and litigants' ability to resolve any question of the real parties in interest in

28   state court.  *Id.* at 589–99 (citing, *e.g.*, *Provident Sav. Life Assur. Soc'y v. Ford*, 114 U.S. 635

United States District Court
Northern District of California

(1885)).  In *Provident*, the Supreme Court held that even where "a colorable assignment has been made to deprive the United States court of jurisdiction," it is "not a ground of removing that cause into the federal court," but at most perhaps grounds for a defense in state court based on failure to sue in the name of the real party in interest or for fraudulently manipulating jurisdiction.  114 U.S. at 640–41.

The Ninth Circuit noted Fifth Circuit authority calling into question that century-old precedent regarding removal, but declined to rely on any doubts as to its validity, instead limiting its holding to cases filed in the first instance in a federal court.  *Id.* at 599, 600 (citing *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 182–85 (5th Cir. 1990)).  That Fifth Circuit case, while noting that some of "the basic propositions for which *Provident* and its progeny stand have been abandoned," acknowledged that "the Supreme Court has not had formal occasion to reexamine that ruling" and thus "*Provident* remains as precedent," such that "whether the Supreme Court was incorrect in its decision in *Provident* [is] a matter of academic interest only."  *Grassi*, 894 F.2d at 184.  That court distinguished the case before it on the basis that the assignment was *partial* rather than complete, and declined to extend *Provident*'s rule to cover partial assignments.  *Id.* at 185.

Molina relies on subsequent decisions from this district that have declined to apply *Attorneys Trust* to look past assignments when considering diversity jurisdiction in the context of removal, at least where an assignment is complete and the assignor is not itself a party to the case.  *See Charles Schwab Corp. v. Banc of Am. Sec. LLC*, No. 10-cv-03489-LHK, 2011 WL 864978, at *3–4 (N.D. Cal. Mar. 11, 2011); *Go Computer Inc. v. Microsoft Corp.*, 2005 WL 3113068, at *2.

In *Go Computer*, Judge White noted that both the Ninth Circuit in *Attorneys Trust* and the Fifth Circuit in *Grassi* declined to hold that the nineteenth-century Supreme Court precedent like *Provident* regarding assignments and removal and had been overturned, instead distinguishing the facts before them—because the case was initially filed in federal court in *Attorneys Trust*, and because the assignment in *Grassi* was partial rather than complete.  *Go Computer Inc. v. Microsoft Corp.*, No. C 05-03356 JSW, 2005 WL 3113068, at *2 (N.D. Cal. Nov. 21, 2005).  He determined that "[a]lthough the value of the consideration [the assignor] was given for the assignment may vary depending upon the value of any potential recovery . . . the claims were assigned in their

entirety to [the assignees], thus ending the Court's inquiry." *Id.* at *3.  Judge White concluded

that *Provident* remained binding, and that since the assignment in the case before him was

complete and presented in the context of removal, that precedent required remand.  *Id.* at *2–3.

In reaching a similar conclusion that the assignment was "complete" in *Charles Schwab*

despite the assignee having agreed to remit ninety-seven percent of any recovery to the assignor,

2011 WL 864978, at *3, Judge Koh relied on relatively recent Supreme Court precedent holding

that assignment of "all 'rights, title and interest' in claim" constituted assignment "lock, stock, and

barrel" sufficient to confer Article III standing, even where the parties agreed by contract that the

assignee would remit all proceeds of litigation to the assignor, and the assignor would pay the

assignee a fee.  *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 272, 286, 291

(2008).  Judge Koh concluded that since the complete assignment of claims meant that "no other

party (including [the assignor]) has standing to bring the claims" asserted, and since on removal it

was not the plaintiff's burden to show that its assignment was proper, the defendant had not

established diversity jurisdiction and the case should be remanded.  *Charles Schwab*, 2011 WL

864978, at *4.  She noted that *Go Computer* addressed "a factual situation very similar to the one

presented" in *Charles Schwab*, and distinguished *Attorneys Trust* as "limited to the unusual case

where the party attacking diversity jurisdiction initially filed suit in federal court."  *Id.*

Here, there is little evidence of the nature of the Molina entities' assignments beyond their

express terms.  The relevant portions read as follows:

> 2. For good and valuable consideration received, [each subsidiary] hereby irrevocably assigns all rights, titles, ownership, and interests in the Claims to MHI [i.e., Molina]. MHI shall maintain sole discretion in prosecuting such claims and managing and controlling the litigation and all strategy and negotiations related thereto, including with respect to (but not limited to) any settlement, dismissal, or other resolution of the claim.

> 3. In consideration for such assignment from [the subsidiary], MHI shall calculate and remit the net recovery, if any, after attorney's fees, litigation expenses and court costs, with respect to [the subsidiary's] claims to [the subsidiary], subject to any applicable inter- or intra-company agreements and / or other legal requirements.

Kim Dec. (dkt. 15) Ex. A.

United States District Court
Northern District of California

United States District Court
Northern District of California

1        Under the terms of these assignments, Molina's subsidiaries have assigned their claims in

2   full to Molina, such that the subsidiaries could no longer bring those claims themselves, and they

3   have not sought to do so by appearing as parties in this case.  *Cf. Grassi*, 894 F.2d at 185 ("[T]he

4   assignor who makes a fractional assignment remains a party to the action, whose presence enables

5   him to take better advantage of whatever local bias may exist.").  These terms are not materially

6   different from the assignments in *Charles Schwab* and *Go Computer*.  As in those cases, the

7   assignment is complete, and *Provident* compels remand regardless of the motive behind the

8   assignment[15] or the subsidies' interest in the outcome.

9        Defendants contend that the assignments are invalid for lack of consideration, because by

10  agreeing to remit all proceeds to the subsidiaries except as needed to cover its costs, Molina itself

11  receives no gain for its efforts to prosecute the case.  Regardless of whether that argument is

12  correct as a matter of contract law, the Supreme Court has rejected it as a basis for remand.

13  *Provident*, 114 U.S. at 641 ("We know of no instance where the want of consideration in a

14  transfer, or a colorable transfer, of a right of action from a person against whom the defendant

15  would have a right of removal to a person against whom he would not have such a right, has been

16  held a good ground for removing a cause from a state to a federal court.").

17       Defendants cite a single district court decision disregarding an assignment that would have

18  destroyed diversity jurisdiction in the context of removal and remand: *Overrated Products, Inc. v.*

19  *Universal Music Group*, No. CV 19-2899-RSWL-RAO, 2019 WL 6729718 (C.D. Cal. July 31,

20  2019).  There, after members of a band receiving an adverse ruling in a related federal case against

21  a record company regarding royalties for recordings, the producer of the recordings created a

22  California corporation, Overrated Products, and assigned it the rights to royalties that had

23  previously been held by a different company, whose citizenship would have given rise to diversity

24  jurisdiction.  *See* 2019 WL 6729718, at *1–2.  The new California corporation sued the record

25

26  _____

27  [15] Molina notes that it has used virtually identical assignments in other cases to consolidate its
    subsidiaries' claims with one entity even where the assignment had no effect on jurisdiction for a
    federal claim filed in federal court, thus calling into question whether the assignments here were
28  made solely to defeat jurisdiction.  In any event, Molina's motive is not relevant to the outcome,
    and the Court need not resolve it.

company, which removed, arguing that the corporation was a sham and that as the real party in interest, the producer's Florida citizenship established diversity jurisdiction. *Id.* at *2. The district court initially remanded, holding that the record company had not shown the plaintiff corporation to be a sham, but after additional evidence came to light through state court proceedings, the record company removed again, and the district court declined to remand a second time. *See id.* at *2–3. Citing *Attorneys Trust* as authority for extending 28 U.S.C. § 1359 to disregard collusive assignment that purport to destroy (as opposed to only create) diversity jurisdiction, the district court held not only that the assignment was collusive, but also that the plaintiff corporation was itself a sham. *See id.* at *5–7. The court did not address *Attorney Trust*'s express limitation to cases initially filed in federal court,[16] or the precedential value of the Supreme Court's decision in *Provident*.

The facts of that case are distinguishable, in that Defendants have not argued here that Molina is a sham corporation in its entirety, and instead attack only the validity of the assignments. To the extent *Overrated Products* could be read as supporting a broader rule that *Attorneys Trust* permits looking past collusive assignments in cases filed in state court and removed, it is not persuasive in that it failed to consider that decision's limitation to cases filed in federal court, the Supreme Court precedent of *Provident*, or *Charles Schwab* and *Go Computer*'s holdings that complete assignments can never be pierced for removal. While constraining *Attorneys Trust* to its express limitation creates different standards for the validity of assignments depending on where a case was filed, that outcome is not only compelled by *Provident*, but also consistent with the Ninth Circuit's "strong presumption against removal." *See Gaus*, 980 F.2d at 566.

The Court therefore holds that Molina's citizenship is the relevant consideration for diversity jurisdiction, and that its Delaware citizenship—which it shares with both defendants—

---

[16] The same court's earlier decision granting a motion to remand after the first removal acknowledged that "courts have declined to extend *Attorneys Trust* where, as here, the action was filed in state court, the alleged real party in interest . . . is not a party to the action, and the assignment was total." *Overrated Prods., Inc. v. Universal Music Grp.*, No. CV 17-09267-RSWL-RAO, 2018 WL 1136881, at *2 (C.D. Cal. Mar. 1, 2018). In denying remand the second time, however, the court did not acknowledge those limitations. 2019 WL 6729718, at *3.

1    precludes a finding of complete diversity necessary for jurisdiction under 1332(a).

2          Even if that were not so, the case would be subject to remand based on the shared New

3    York citizenship of BMS and Molina's New York subsidiary.  Defendants argue that BMS is

4    fraudulently joined since Molina's complaint only alleges conduct by its subsidiary Celgene, and

5    in fact demands judgment only against Celgene, and that the California court lacks personal

6    jurisdiction over Defendants with respect to claims by the New York subsidiary.

7          "[F]raudulently joined defendants will not defeat removal on diversity grounds." *Ritchey*

8    *v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  "The term 'fraudulent joinder' is a

9    term of art, used for removal purposes, and does not connote any intent to deceive on the part of

10   plaintiff or his counsel."  *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 n.2

11   (N.D. Cal. 2001).  "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's

12   presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to

13   state a cause of action against a resident defendant, and the failure is obvious according to the

14   settled rules of the state," such that there is no possibility a state court would find a valid claim

15   against the non-diverse defendants, and any deficiency could not be cured by amendment.  *Morris*

16   *v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *see GranCare, LLC v. Thrower ex*

17   *rel. Mills*, 889 F.3d 543, 549–50 (9th Cir. 2018).  At least one court has applied the same test to a

18   purportedly fraudulently joined plaintiff, which would seem to apply to Defendants' argument that

19   Molina's New York subsidiary should be disregarded.  *Tahoe Keys Marina & Yacht Club, LLC v.*

20   *Merkelback*, No. 2:12-CV-02582-GEB-AC, 2013 WL 221510, at *1 (E.D. Cal. Jan. 18, 2013).

21         Here, Defendants are correct that the complaint does not state a claim against BMS, but

22   they have not shown that Molina could not cure that deficiency by amendment to include

23   allegations of conduct by BMS or grounds for alter ego liability.  Assuming for the sake of

24   argument they are correct as to a lack of personal jurisdiction for claims by the New York

25   subsidiary, any such deficiency there could also potentially be cured by amendment to allege a

26   stronger connection to California for that entity's claims.

27         That said, the New York subsidiary is not a party to the case, and as discussed above, it is

28   Molina's citizenship that matters.  The New York connection would be relevant only if

30

1   Defendants were correct that the Court may disregard the assignment, which they are not.  Based

2   on Molina's shared Delaware citizenship with both Celgene and BMS, the Court lacks diversity

3   jurisdiction under § 1332(a).

4   **IV.      CONCLUSION**

5           For the reasons discussed above, Molina's motion to remand is GRANTED.  The Clerk

6   shall remand the case to the California Superior Court for the County of San Francisco and close

7   the file in this Court.  Lacking subject matter jurisdiction, the Court does not reach Defendants'

8   motion to transfer and motion to dismiss.  Defendants may renew any arguments for dismissal that

9   they wish to pursue before the state court.

10          **IT IS SO ORDERED.**

11  Dated: January 18, 2022

12  _____

13  JOSEPH C. SPERO
    Chief Magistrate Judge

United States District Court
Northern District of California

31